## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF MISSOURI
## SOUTHEASTERN DIVISION

TYRONE DAVIS,                          )
                                       )
     Plaintiff,                      )
                                       )
vs.                                    )          Case No. 1:20-CV-171 SNLJ
                                       )
RAYMOND MICHAEL BROWNLEE, et al.,      )
                                       )
     Defendants.                     )

### <u>MEMORANDUM AND ORDER</u>

This matter is before the Court upon the motion of self-represented plaintiff Tyrone Davis for leave to commence this action without prepayment of the required filing fee. Having reviewed the motion and the financial information submitted in support, the Court will grant the motion and assess an initial partial filing fee of $44.76. *See* 28 U.S.C. § 1915(b)(1). Furthermore, for the reasons discussed below, the Court will dismiss the complaint.

### Initial Partial Filing Fee

Pursuant to 28 U.S.C. § 1915(b)(1), a prisoner bringing a civil action *in forma pauperis* is required to pay the full amount of the filing fee. If the prisoner has insufficient funds in his or her prison account to pay the entire fee, the Court must assess and, when funds exist, collect an initial partial filing fee of 20 percent of the greater of (1) the average monthly deposits in the prisoner's account, or (2) the average monthly balance in the prisoner's account for the prior six-month period. After payment of the initial partial filing fee, the prisoner is required to make monthly payments of 20 percent of the preceding month's income credited to the prisoner's account. 28 U.S.C. § 1915(b)(2). The agency having custody of the prisoner will forward these monthly payments to the Clerk of Court each time the amount in the prisoner's account exceeds $10, until the filing fee is fully paid. *Id.*

Plaintiff has submitted an affidavit and a certified copy of his prison account statement for the six-month period immediately preceding the submission of his complaint. A review of plaintiff's account indicates an average monthly deposit of $223.83. Plaintiff has insufficient funds to pay the entire filing fee. Accordingly, the Court will assess an initial partial filing fee of $44.76.

## Legal Standard on Initial Review

Under 28 U.S.C. § 1915(e)(2), the Court is required to dismiss a complaint filed *in forma pauperis* if it is frivolous, is malicious, fails to state a claim upon which relief can be granted, or seeks monetary relief against a defendant who is immune from such relief. To state a claim for relief, a complaint must plead more than "legal conclusions" and "[t]hreadbare recitals of the elements of a cause of action [that are] supported by mere conclusory statements." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). A plaintiff must demonstrate a plausible claim for relief, which is more than a "mere possibility of misconduct." *Id.* at 679. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* at 678. Determining whether a complaint states a plausible claim for relief is a context-specific task that requires the reviewing court to draw on its judicial experience and common sense. *Id.* at 679.

When reviewing a complaint filed by a self-represented person under 28 U.S.C. § 1915, the Court accepts the well-plead facts as true, *White v. Clark*, 750 F.2d 721, 722 (8th Cir. 1984), and liberally construes the complaint. *Erickson v. Pardus*, 551 U.S. 89, 94 (2007); *Haines v. Kerner*, 404 U.S. 519, 520 (1972). A "liberal construction" means that if the essence of an allegation is discernible, the district court should construe the plaintiff's complaint in a way that permits his or her claim to be considered within the proper legal framework. *Solomon v. Petray*, 795 F.3d 777, 787 (8th Cir. 2015). However, even self-represented complainants are required to allege facts which, if true, state a claim for relief as a matter of law. *Martin v. Aubuchon*, 623

- 2 -

F.2d 1282, 1286 (8th Cir. 1980); *see also Stone v. Harry*, 364 F.3d 912, 914-15 (8th Cir. 2004) (refusing to supply additional facts or to construct a legal theory for the self-represented plaintiff that assumed facts that had not been pleaded).

### Background

According to an independent review of plaintiff's criminal history on Missouri Case.net, the State of Missouri's online docketing system, plaintiff was charged with burglary in the second degree and misdemeanor stealing on or about November 21, 2019, by Complaint, and a probable cause statement was filed on that same date. *See State v. Davis*, No. 19MI-CR00565 (Mississippi County Court, 33rd Judicial Circuit). The probable cause statement was filled out by East Prairie Police Officer Brent Douglas and stated as follows:

> I have probable cause to believe that on 11/20/2019 at about 02:30 hours [plaintiff committed the crimes of burglary in the second degree and misdemeanor stealing] based on the following:
>
> On Wednesday, 11/20/2019 at about 09:45 hours I responded to, Mitchell Memorial Library, 204 East Washington St. in East Prairie, Mississippi County, Missouri 63845 in reference to the business being burglarized. Upon my arrival I made contact with the employee who was identified as Terry Sprinkles. Sprinkles stated once she arrived at work, she noticed a chair had been moved from behind the desk where they collect money. Once the cash drawer was opened it was noticed that all the cash had been removed from the money tray. After counting the remaining change and pulling their receipts it was determined that the sum of $263.30 was stolen from the business. Sprinkles advised me that she noticed scuff marks from shoes on the walls in the bathroom. There was a metal screen that had been unscrewed from the outside to gain access to the window. The glass window was unlocked from the inside as well as the screen window had to be unlocked from the inside as well. I went outside and located two screws in the grass under the window where the screen had metal screen had been removed from the business. I collected a sign in sheet from Sprinkles and observed the last individual inside the business was Tabitha Davis, a tall black male, and two younger children. Sprinkles stated that Tabitha and the tall black male used the bathroom while inside the business. Once the male came out of the bathroom he left the business while the others were still inside. With prior law enforcement experience I knew the tall male to be Tabitha's ex husband Tyrone Davis. Chief Higgins and myself responded to A@M Rental were we was allowed access to their video surveillance. While observing the surveillance I observed on 11/20/2019 at about 02:23 hours two individuals traveling north on Washington on foot. They walked close to the Webb basketball gym and then went west

towards the library. Chief Higgins and I both believed that we identified the shorter male in the video as Juvenile # 1 by the way he walked due to prior law enforcement interaction. I then responded to the East Prairie High School and was allowed access to observe their video surveillance system. While observing the surveillance I observed on 11/20/2019 at about 02:25 hours two males walked along the fence behind the library and enter the business through the window. Chief Higgins and I responded to 52 Conn St where Juvenile # 1 and Tyrone Davis were placed under arrest and transported the East Prairie PD. Chief Higgins placed Tyrone in the interview room and advised him of his Miranda Rights, where he stated he fully understood them. During the course of the interview Tryone stated that it was all Juvenile #1's idea. Tryone also stated that he only had about $55 left of the money because he had spent some at the local stores and wired some to other people. I placed Juvenile #1 in the interview room where he was advised of his Miranda Rights by Juvenile Officer Roberts. During the course of the interview Juvenile #1 stated that Tyrone woke him up out of bed and asked him to come watch out from him. They then walked to north by the Webb basketball gym and then west beside the fence behind the library. Juvenile # 1 stated that the screen had been unscrewed a few days prior so when they got there Tyrone took the screen down and opened the window and climbed inside. Juvenile #1 stated after a few minutes he climbed up and partially entered the business and beat on the bathroom door to have Tyrone exit. Once out and back to their residence Tyrone gave Juvenile #1 $10 from the money stolen from the business.

The defendant has a felony criminal history as follows:
Robbery 2nd Degree (1996).
Forgery (2004).
Forgery (2004).

The defendant needs a bond set due to his history for Robbery and Forgery.

Plaintiff was served with a warrant for his arrest on or about November 26, 2019, and public defender Raymond Brownlee entered his appearance on his behalf on November 27, 2019 to enter a plea of not guilty in his criminal action.

A Preliminary Hearing was held on December 18, 2019, and plaintiff was represented by Kerina Ibarra (on behalf of Raymond Brownlee). Testimony was presented in the hearing. Plaintiff was then bound over to the Circuit Court. An Information was filed on December 20, 2019, charging plaintiff with burglary in the second degree and misdemeanor stealing. After moving for change of judge, plaintiff's public defender Raymond Brownlee entered a plea of not guilty on plaintiff's behalf on January 24, 2020. Mr. Brownlee moved for discovery and to

compel production of the State's evidence on March 13, 2020,[1] and May 13, 2020, respectively. He then moved to reduce plaintiff's bond on June 5, 2020, and July 31, 2020. The motions for reduction of bond were denied.

On August 31, 2020, plaintiff filed a pro se motion in his criminal action to dismiss the charges against him. In his motion he asserts that he is actually innocent of the charges submitted against him, and he seeks a speedy resolution of the case. *See State v. Davis,* No. 19MI-CR00565-01 (Mississippi County Court, 33rd Judicial Circuit). Plaintiff states that he is also seeking an affidavit from his counsel as to his innocence.

On September 4, 2020, plaintiff filed a pro se motion for change of venue. *Id.* In his motion he asserts that the matter should be transferred from Mississippi County Court to New Madrid County Court. Plaintiff does not give a reason for his request for change of venue.

On September 25, 2020, new counsel from the Missouri Public Defender's Office entered her appearance on behalf of plaintiff. Immediately thereafter, plaintiff filed correspondence with the Court indicating that he believed his prior counsel, Mr. Brownlee had been ineffective due to his failure to properly advocate for his innocence and subpoena pertinent witnesses and documents.

On January 29, 2021, plaintiff plead guilty to burglary in the second degree. He was represented by Missouri Public Defender Leslie Hazel. He was sentenced to five (5) years' imprisonment in the Missouri Department of Corrections.

---

[1]In a supplement to the complaint, filed on October 26, 2020, plaintiff filed a copy of Raymond Brownlee's Supplemental Request for Discovery filed on March 13, 2020. In his two page request, defendant Brownlee lists the discovery he has received on behalf of plaintiff to date, as well as the discoverable items still missing, including: (1) incident reports written by Chief Higgins relating to his questioning of plaintiff; (2) reports or notes written by Chief Higgins regarding the juvenile Jamari Thomas who was questioned in connection with this case; (3) reports or notes written by Captain Douglas regarding plaintiff or Jamari Thomas; (4) security camera footage reviewed by officers when investigating this case; (5) additional footage or pictures taken by officers; (6) recordings/recorded statements made by officers or witnesses relating to this case; and (7) copy of all warrants and application materials.

## The Complaint

Plaintiff, an inmate at Mississippi County Jail, brings this action under 42 U.S.C. § 1983 alleging violation of his civil rights during the process of his criminal proceedings. Although he brings this action against several named defendants, his allegations mainly center around his prior public defender, Raymond Brownlee. He names defendant Brownlee in his individual and official capacities.  Plaintiff also names public defender Kerina Ibarra, as well as Prosecuting Attorney Darren Cann as defendants in this action. He names the East Prairie Police Department, Captain Brent Douglas, Chief Mark Higgins and Judge S. Rob Barker as additional defendants. Last, plaintiff makes conclusory allegations against the Mississippi County Detention Center.

Plaintiff alleges that he instructed defendant Brownlee to file a change of venue motion to New Madrid County in his criminal action, but he failed to do so. Plaintiff states that he asked defendant Brownlee to file a change of venue because he believed he couldn't get a fair trial in Mississippi County. As noted above, plaintiff did file a pro se motion for change of venue on September 4, 2020.

Plaintiff also takes issue with defendant Brownlee, filing a motion for change of judge in Scott County without his purported permission. Plaintiff does not indicate why this motion purportedly violated his rights under the Constitution.

Plaintiff alleges that attorney Brownlee inadvertently allowed "another defendant" to access his personal information during discovery by mailing his "discovery pack" to another inmate in the Mississippi County Jail that attorney Brownlee also represented. Plaintiff states that the discovery pack included information such as plaintiff's place of residence, his date of birth, his social security number and his spouse's name.

Plaintiff alleges defendant Brownlee failed to subpoena "audio and video surveillance" of the purported crime for which he was accused. The Court notes that on July 6, 2020, defendant

Brownlee issued five subpoenas on behalf of plaintiff. Several of the subpoenas instructed witnesses to bring documents relating to plaintiff at the time of their depositions, including those relating to evidence gathered by the police during their investigations.

Plaintiff asserts that during his preliminary hearing on December 18, 2019, defendant Brownlee failed to ask for the hearing to be transcribed which "resulted in testimony giving in [plaintiff's] favor not to be recorded." As noted above, at this hearing, the record shows that plaintiff was not represented by defendant Brownlee but was represented by defendant Ibarra. Plaintiff alleges that defendant Ibarra failed to provide him with a recording of the hearing when he asked her for one.

Last, plaintiff asserts that he was misrepresented by attorney Brownlee at his arraignment on January 24, 2020. Plaintiff does not go into detail as to how he was misrepresented by attorney Brownlee, only stating that his due process rights were violated when defendant Brownlee waived his formal arraignment.

As to defendant Darren Cann, the prosecutor in his criminal action, plaintiff asserts that he failed to present the following at the preliminary hearing on December 18, 2019: (1) audio and video evidence of the alleged burglary; (2) audio and video evidence of the alleged interrogations; (3) copies of money purportedly taken from plaintiff; (4) audio and video of the arrest; (5) copies of the fingerprint analyses (6) copies of the alleged Western Union transactions; (7) copies of the alleged burglarized library; (8) copies of the serial number on the alleged stolen money; (9) full report of East Prairie Police Department Interrogation Audio & Video Conversation with both alleged defendants in the criminal case; (10) sworn witness testimony.

Plaintiff asserts that Chief of East Prairie Police Department, Mark Higgins, violated his rights, when he allowed one of his officers to place him in an interrogation room on November 20, 2019 and question him, after which time he was placed on a twenty-four (24) hold. He states

that before taking him into interrogation, Chief Higgins filed a "probable cause affidavit," with the intention of charging him with the crimes of burglary and stealing. Plaintiff states that Chief Higgins testified at the preliminary hearing that there is no video evidence of the interrogation. And as such, this was a violation of plaintiff's rights.

Plaintiff asserts that the East Prairie Police Department violated his due process rights (Fourth, Fifth, Sixth Amendments), when he was placed on a twenty-four (24) hour hold and questioned regarding a burglary.

Plaintiff asserts that the Judge presiding over his preliminary hearing, Judge Barker, violated his due process rights by failing to transcribe the hearing. He asserts that Judge Barker also violated his rights by binding him over for trial without enough evidence to do so. Plaintiff states that this is obvious because Officer Douglas, Captain of the East Prairie Police Department, testified at the hearing that the video surveillance was "unclear" at the time he was arrested. Plaintiff states that Officer Douglas has failed to produce to the Court any form of physical evidence that plaintiff committed the crimes for which he has been charged.

Plaintiff states generally that the Mississippi County Detention Center is subject to suit for "mail tampering" and "medical malpractice" due to infection. Plaintiff, however, does not provide any factual allegations relative to these claims.

Plaintiff seeks damages and injunctive relief.

## Discussion

Plaintiff's complaint is subject to dismissal under 28 U.S.C. § 1915(e)(2)(B) for multiple reasons. Plaintiff's complaint fails to allege a violation of a constitutional right by any of the named defendants, as protected by § 1983. For all these reasons, this case will be dismissed.

Plaintiff brings this action pursuant to 42 U.S.C. § 1983, which was designed to provide a "broad remedy for violations of federally protected civil rights." *Monell v. Dep't of Soc. Servs,*

- 8 -

436 U.S. 658, 685 (1978). To state a claim under 42 U.S.C. § 1983, a plaintiff must establish:
(1) the violation of a right secured by the Constitution or laws of the United States, and (2) that
the alleged deprivation of that right was committed by a person acting under color of state law.
*West v. Atkins*, 487 U.S. 42, 48 (1988). As stated, plaintiff's complaint fails to state a § 1983
claim upon which relief may be granted against all the named defendants.

"[A] lawyer representing a client is not, by virtue of being an officer of the court, a state
actor 'under color of state law' within the meaning of § 1983." *Polk Cty. v. Dodson*, 454 U.S.
312, 318 (1981). "[A] public defender does not act under color of state law when performing a
lawyer's traditional functions as counsel to a defendant in a criminal proceeding." *Id.* at 325. In
this case, plaintiff's complaints about public defenders Raymond Brownlee and Kerina Ibarra,
concern Brownlee's and Ibarra's performance of the traditional functions of a defense attorney.
None of the allegations indicate that Brownlee or Ibarra or the Mississippi County Defender's
Office acted as a state actor or as a willful participant in joint activity with the state. As such,
plaintiff's allegations against the Mississippi County Public Defender's Office and public
defenders Raymond Brownlee and Kerina Ibarra fail to state a claim upon which relief may be
granted.

Plaintiff's claims against defendant Darren Cann are subject to dismissal because he is
entitled to immunity under § 1983. Prosecutors are immune from § 1983 actions so long as the
actions complained of appear to be within the scope of prosecutorial duties. *Price v. Moody*, 677
F.2d 676, 677 (8th Cir. 1982); *see also Keating v. Martin*, 638 F.2d 1121, 1122 (8th Cir. 1980).
The immunity enjoyed by prosecutors from § 1983 actions can be either absolute or qualified.
*Brodnicki v. City of Omaha*, 75 F.3d 1261, 1266 (8th Cir. 1996). A prosecutor is entitled to
absolute immunity if he or she is acting as an advocate for the State in a criminal prosecution. *Id.*

- 9 -

On the other hand, a prosecutor is entitled to only qualified immunity when he or she pursues actions in an "investigatory" or "administrative" capacity. *Id.*

"Absolute immunity protects prosecutors against claims arising from their initiation of a prosecution and presenting a criminal case insofar as that conduct is intimately associated with the judicial phase of the criminal process." *Sample v. City of Woodbury*, 836 F.3d 913, 916 (8th Cir. 2016). This immunity depends on the functional nature of the prosecutor's activities; therefore, immunity is not defeated by "allegations of improper motive in the performance of prosecutorial functions." *Id.* Absolute immunity still applies even when there are allegations of malice, vindictiveness, or self-interest. *Reasonover v. St. Louis Cty., Mo.*, 447 F.3d 569, 580 (8th Cir. 2006). Absolute immunity also "covers actions taken to initiate a prosecution, even if those actions are patently improper." *Saterdalen v. Spencer*, 725 F.3d 838, 842 (8th Cir. 2013).

Here, defendant Cann is absolutely immune from liability because his allegedly wrongful conduct took place during the initiation and pursuit of a criminal prosecution. Plaintiff alleges that Cann failed to present the entirety of his case against plaintiff at the preliminary hearing. However, filing a case against plaintiff is clearly a prosecutorial function qualifying for absolute immunity. *See Schenk v. Chavis*, 461 F.3d 1043, 1046 (8th Cir. 2006) ("The acts of preparing, signing, and filing a criminal complaint constitute prosecutorial functions, as they are advocacy on behalf of the government"). This would stand true, even if plaintiff had clearly alleged an improper motive for the filing of the case against him. *See Sample*, 836 F.3d at 916 ("Allegations of unethical conduct and improper motive in the performance of prosecutorial functions do not defeat the protection of absolute immunity"). Therefore, Cann is absolutely immune from liability, and the claims against him must be dismissed.

Plaintiff's claims against Judge Barker are also subject to dismissal. Because a judicial officer, exercising the authority in which he or she is vested, should be free to act upon their own

- 10 -

convictions, judicial immunity provides a judge with immunity from suit. *Hamilton v. City of Hayti, Missouri*, 948 F.3d 921 (8th Cir. 2020). "Like other forms of official immunity, judicial immunity is an immunity from suit, not just from ultimate assessment of damages." *Mireles v. Waco*, 502 U.S. 9, 11 (1991). This immunity applies even when the judge is accused of acting maliciously or corruptly. *Pierson v. Ray*, 386 U.S. 547, 554 (1967). *See also Woodworth v. Hulshof*, 891 F.3d 1083, 1090 (8th Cir. 2018) (stating that "judicial immunity is not overcome by allegations of bad faith or malice"). Moreover, "a judge will not be deprived of his immunity because the action he took was in error or was in excess of his authority." *Justice Network, Inc. v. Craighead Cty.*, 931 F.3d 753, 760 (8th Cir. 2019).

A judge's immunity from § 1983 actions bars a plaintiff's recovery in all but two narrow sets of circumstances. *Schottel v. Young*, 687 F.3d 370, 373 (8th Cir. 2012). First, a judge does not have immunity for non-judicial actions. *Duty v. City of Springdale, Ark.*, 42 F.3d 460, 462 (8th Cir. 1994). "An act is a judicial act if it is one normally performed by a judge and if the complaining party is dealing with the judge in his judicial capacity." *Birch v. Mazander*, 678 F.2d 754, 756 (8th Cir. 1982). *See also Justice Network, Inc.*, 931 F.3d at 760 (stating "that to determine whether an act is judicial, courts look to the particular act's relation to the general function normally performed by a judge").

Second, a judge is not immune from lawsuits based on actions taken in the complete absence of jurisdiction. *Duty*, 42 F.3d at 462. This is the case even if the judge's actions were judicial in nature. *Schottel*, 687 F.3d at 373. In the context of judicial immunity, however, the scope of the judge's jurisdiction is construed broadly. *Justice Network, Inc.*, 931 F.3d at 762. "[A]n action – taken in the very aid of the judge's jurisdiction over a matter before him – cannot be said to have been taken in the absence of jurisdiction." *Mireles*, 502 U.S. at 13.

In this case, plaintiff has presented no allegations tending to show that Judge Barker took a non-judicial action or acted in the complete absence of jurisdiction. Rather, plaintiff's contention is that Judge Barker and others made incorrect or improper rulings during the course of his criminal case. Judicial immunity is meant to protect judges from this kind of suit. In other words, judicial immunity protects judges when making decisions during a case, even if their decisions were malicious, corrupt, or erroneous. Therefore, plaintiff's claim against Judge Barker must be dismissed.

Plaintiff's claims against the East Prairie Police Department and Mississippi County Detention Center must also be dismissed. Neither of these entities is a juridical entity suable under 42 U.S.C. § 1983. *See Ketchum v. City of West Memphis, Ark.*, 974 F.2d 81, 82 (8th Cir. 1992) (stating that West Memphis Police Department and West Memphis Paramedic Services were "simply departments or subdivisions of the City government," and not suable entities); *Owens v. Scott Cty. Jail*, 328 F.3d 1026, 1027 (8th Cir. 2003) (stating that "county jails are not legal entities amenable to suit"); and *De La Garza v. Kandiyohi Cty. Jail*, 18 Fed. Appx. 436, 437 (8th Cir. 2001) (affirming district court dismissal of county jail and sheriff's department as parties because they are not suable entities). Thus, plaintiff's claims against these entities are subject to dismissal.

Even if the East Prairie, Missouri (the local municipality governing the Police Department) and Mississippi County (the County governing Mississippi Detention Center) were substituted as the proper parties for these two defendants, plaintiff would have still failed to state a municipal liability claim against each of these two defendants as he has not alleged an unlawful custom or policy claim against either defendant or a failure to train or supervise claim.[2]

---

[2]A local governing body such as the East Prairie, Missouri or Mississippi County, Missouri can be sued directly under 42 U.S.C. § 1983. *See Monell v. Dep't of Soc. Servs. of City of New York*, 436 U.S. 658, 690 (1978). In order to prevail on this type of claim, the plaintiff must establish the governmental entity's liability for the alleged

Therefore, plaintiff's claims against East Prairie Police Department and Mississippi County Detention Center must be dismissed.

Last, plaintiff's claims against Captain Brent Douglas, Chief Mark Higgins must also be dismissed. Plaintiff asserts that Chief of East Prairie Police Department, Mark Higgins, violated his rights, when he allowed one of his officers to place him in an interrogation room on November 20, 2019 and question him, after which time he was placed on a twenty-four (24) hold. Plaintiff states that Chief Higgins testified at the preliminary hearing that there is no video evidence of the interrogation. And as such, plaintiff believes that this was a violation of his rights. Unfortunately, plaintiff's claims against defendants must be dismissed. The Missouri courts nor the federal courts have ever held that video recording a custodial interview for the crimes of burglary or misdemeanor stealing is mandatory. *See, e.g., U.S. v. French,* 719 F.3d 1002, 1007 (8th Cir. 2013) (agreeing with other circuits that due process does not require recording of self-incriminating custodial statements); *Martin v. Norman*, Case No., 4:11-CV-434 CEJ (E.D.Mo), 2013 WL 6639166 (December 17, 2013); *see also,* Mo. Stat. Ann. § 590.700, subd. 3(6) "[n]othing in [the statute requiring recording] shall be construed as a ground to exclude evidence."[3] Additionally, plaintiff has already plead guilty to the crime for which he was

---

conduct. *Kelly v. City of Omaha, Neb.,* 813 F.3d 1070, 1075 (8th Cir. 2016). Such liability may attach if the constitutional violation "resulted from (1) an official municipal policy, (2) an unofficial custom, or (3) a deliberately indifferent failure to train or supervise." *Mick v. Raines*, 883 F.3d 1075, 1079 (8th Cir. 2018). *See also Marsh v. Phelps Cty.,* 902 F.3d 745, 751 (8th Cir. 2018) (recognizing "claims challenging an unconstitutional policy or custom, or those based on a theory of inadequate training, which is an extension of the same").

[3]Missouri does appear to require some sort of recording for custodial interviews, but only for the following crimes:

> persons suspected of committing or attempting to commit murder in the first degree, murder in the second degree, assault in the first degree, assault of a law enforcement officer in the first degree, domestic assault in the first degree, elder abuse in the first degree, robbery in the first degree, arson in the first degree, rape in the first degree, forcible rape, sodomy in the first degree, forcible sodomy, kidnapping, kidnapping in the first degree, statutory rape in the first degree, statutory sodomy in the first degree, child abuse, or child kidnapping. . .when feasible. Mo.Rev.Stat.§590.700.

accused. Therefore, his claims against these police officers are barred by the doctrine of *Heck v. Humphrey*. 512 U.S. 477 (1994).

After carefully reading and liberally construing the complaint and supplement, the Court concludes that the complaint is subject to dismissal for failure to state a claim upon which relief may be granted. It is apparent that the problems with the complaint would not be cured by permitting plaintiff to file an amended pleading. The Court will therefore dismiss this action without prejudice, pursuant to 28 U.S.C. § 1915(e)(2)(B).

On August 12, 2020, plaintiff filed a motion to appoint counsel. The Court will deny plaintiff's request as moot, given the fact that plaintiff's claims in this matter are being dismissed pursuant to 28 U.S.C. § 1915(e)(2)(B).

Accordingly,

**IT IS HEREBY ORDERED** that plaintiff's motion to proceed *in forma pauperis* [ECF No. 2] is **GRANTED**.

**IT IS FURTHER ORDERED** that the plaintiff shall pay an initial filing fee of $44.76 within **twenty-one (21) days** of the date of this Order. Plaintiff is instructed to make his remittance payable to "Clerk, United States District Court," and to include upon it: (1) his name; (2) his prison registration number; (3) the case number; and (4) that the remittance is for an original proceeding.

**IT IS FURTHER ORDERED** that the Clerk shall **not** issue process or cause process to issue upon the complaint because the complaint fails to state a claim upon which relief can be granted. *See* 28 U.S.C. § 1915(e)(2)(B).

**IT IS FURTHER ORDERED** that plaintiff's motion for appointment of counsel [ECF No. 4] is **DENIED as moot**.

- 14 -

**IT IS HEREBY CERTIFIED** that an appeal from this dismissal would not be taken in good faith.

An Order of Dismissal will accompany this Memorandum and Order.

Dated this _3rd_ day of February, 2021.

STEPHEN R. LIMBAUGH, JR.
SENIOR UNITED STATES DISTRICT JUDGE

- 15 -